IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE WOODLANDS TOWNSHIP f/k/a TOWN CENTER IMPROVEMENT DISTRICT, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:12cv00745 |
| v. | § § | |
| UNICREDIT BANK AG f/k/a BAYERISCHE HYPO –UND VEREINSBANK AG, | § § § | |
| Defendant, | | |

**ANSWER AND COUNTERCLAIM OF UNICREDIT BANK AG**

Pursuant to Rules 8 and 13 of the Federal Rules of Civil Procedure, defendant UniCredit Bank AG, formerly known as Bayerische Hypo –Und Vereinsbank AG ("UniCredit"), for its Answer to the complaint filed by The Woodlands Township, formerly known as Town Center Improvement District ("Woodlands"), and for its Counterclaim against Woodlands, hereby states as follows:

**I.   UNICREDIT'S ANSWER**

### Discovery Statement

1.     This action has been removed to the United States District Court for the Southern District of Texas, and therefore no response is required.

### Parties

2.     UniCredit admits the allegations in paragraph 2.

3.     UniCredit admits that it is a German corporation with a principal place of business in Munich, Germany, and that UniCredit operates in the United States through its New

York Branch.  UniCredit further admits that UniCredit (through its New York Branch) and Woodlands entered into the PSA Master Repurchase Agreement and Annex I dated July 26, 2001 (the "Contract").  UniCredit further admits that Woodlands served UniCredit via substituted service under Texas law by delivering a copy of its Complaint to the Texas Secretary of State on February 21, 2012.  UniCredit denies the remaining allegations in paragraph 3.

## Jurisdiction and Venue

4.This matter has been removed to the United States District Court for the Southern District of Texas, and therefore no answer is necessary with respect to the jurisdiction of the district court of Montgomery County, Texas.

5.This matter has been removed to the United States District Court for the Southern District of Texas, and therefore no answer is necessary with respect to whether venue is proper in the district court of Montgomery County, Texas.

## Facts

6.UniCredit admits that UniCredit (through its New York Branch) and Woodlands entered into the Contract on July 26, 2001 and respectfully refers the Court to the Contract for its content, which speaks for itself.  UniCredit denies the remainder of the allegations of paragraph 6, including that the Contract is currently valid and enforceable against UniCredit.

7.UniCredit admits that it made payments under the Contract from July 2001 through the present time, but avers that beginning in August 31, 2010 and at all times thereafter, UniCredit has not been required to make those payments.  UniCredit admits that it has informed Woodlands on several occasions that, as a result of certain of Woodlands' actions, the Contract should be terminated.  UniCredit denies the remainder of the allegations of paragraph 7.

8.UniCredit denies the allegations of paragraph 8, except admits that a justiciable

controversy exists with respect to the rights and status of the parties relative to the Contract.

9. UniCredit denies the allegations of paragraph 9.

### Cause of Action

**A.     Declaratory Judgment**

10. UniCredit realleges and incorporates by reference all of its responses to the preceding paragraphs.

11. Paragraph 11 is a legal conclusion to which no response is required. To the extent a response is required, UniCredit admits that a justiciable controversy exists with respect to the rights and status of the parties relative to the Contract, and that Woodlands seeks declaratory relief. UniCredit denies the remainder of the allegations of paragraph 11.

**B.     Attorneys' Fees**

12. UniCredit realleges and incorporates by reference all of its responses to the preceding paragraphs.

13. UniCredit denies knowledge or information sufficient to form a belief as to the truth of the first sentence of paragraph 13. The remainder of Paragraph 13 is a legal conclusion to which no response is required. To the extent a response is required, UniCredit denies the remaining allegations of paragraph 13, and avers that Section 37.009 of the Texas Civil Practice and Remedies Code is inapplicable to these proceedings.

**II.     AFFIRMATIVE DEFENSES**

14. UniCredit asserts the following affirmative defenses to Woodlands' claim for a declaratory judgment. The assertion of an affirmative defense is not a concession that UniCredit has the burden of proving the matter asserted.

### First Affirmative Defense

15. Woodlands' request for declaratory judgment fails to state a claim against

3

UniCredit upon which relief can be granted.

### Second Affirmative Defense

16.     Woodlands's request for declaratory judgment is barred, in whole or in part, because Woodlands breached the Contract as of August 31, 2010.

### Third Affirmative Defense

17.     Woodlands' request for declaratory judgment is barred, in whole or in part, by Woodlands' own unclean hands and the defense of *in pari delicto*.

### Fourth Affirmative Defense

18.     Woodlands' request for declaratory judgment is barred, in whole or in part, by the equitable doctrines of laches, waiver and equitable estoppel.

### Fifth Affirmative Defense

19.     Woodlands' request for declaratory judgment is barred, in whole or in part, by the equitable doctrine of unjust enrichment.

### III.   COUNTERCLAIM OF UNICREDIT

20.     UniCredit brings the following Counterclaim against Woodlands based on harm incurred by UniCredit as a result of Woodlands' deliberate and ongoing partial breach of the Contract.

21.     The Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1332(a)(2).

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

### PARTIES

23.     UniCredit is a German corporation with a principal place of business in Munich, Germany that operates in the United States through its New York Branch.

24.     Woodlands is a Texas governmental organization with its principal office in

Woodlands, Montgomery County, Texas.

# FACTUAL ALLEGATIONS

The Parties Enter Into The Contract
In Connection With The 2001 Bond Resolution

25. On June 14, 2001, pursuant to its authority under the laws of the State of Texas, Woodlands adopted a resolution authorizing the issuance and sale of Woodlands sales tax and hotel occupancy tax bonds, series 2001 (the "2001 Resolution"). The series 2001 bonds issued pursuant to the 2001 Resolution (the "2001 Bonds") purportedly were issued for the purpose of paying all or part of the costs of an improvement project to promote and develop economic activity and commerce within Woodlands (the "Project").

26. The money generated by the sale of the 2001 Bonds was placed in a number of different Project funds. One such fund, the "Debt Service Reserve Fund," contained amounts raised from the sale of the 2001 Bonds that Woodlands set aside to pay interest, principal or certain other obligations associated with the 2001 Bonds.

27. Woodlands invested the monies from the Debt Service Reserve Fund in a "repurchase agreement" with UniCredit, whereby UniCredit agreed to (i) transfer certain securities or other assets to Woodlands in exchange for a transfer of funds by Woodlands and (ii) repurchase those securities at a later date, or upon the occurrence of certain conditions. On July 26, 2001, UniCredit and Woodlands memorialized this agreement in the Contract, and on or about July 26, 2001, Woodlands transferred to UniCredit $1,877,187.50 in Debt Service Reserve Funds in exchange for the transfer of certain securities (the "Purchased Securities") by UniCredit (the "Transaction"). In connection with the Transaction, UniCredit agreed to provide Woodlands with a "pricing rate" (*i.e.,* an interest rate) on the monies invested by Woodlands until March 1, 2027, or upon the occurrence of certain conditions.

28.     The material terms of the Transaction were set forth in Annex I to the Contract. In the Annex, Woodlands made several covenants to UniCredit with respect to providing UniCredit with timely information – and notice of any material changes – concerning the 2001 Bonds, including "written notice of all proposed amendments and waivers to the [2001] Resolution that would affect the Transactions."  Also in the Annex, Woodlands covenanted to UniCredit that:

- all funds used by [Woodlands] to pay for the Purchased Securities are derived from funds and accounts established pursuant to the [2001] Resolution;

- the Transactions contemplated hereunder constitute a permitted investment in accordance with the [2001] Resolution and any laws, rules, regulations, agreements or instruments applicable to [Woodlands] and to the funds invested hereunder and that it has received all required consents, authorization and direction to enter into the Transactions contemplated herein in accordance with applicable provisions of the [2001] Resolution;

- it will not invest or use any funds other than proceeds under the [2001] Resolution in connection with any transaction contemplated hereunder

Woodlands Refunds and Redeems The 2001 Bonds

29.     On or about August 31, 2010, Woodlands issued a bond order authorizing the advance refunding and redemption prior to maturity of the 2001 Bonds (the "2010 Bond Order").

30.     On September 23, 2010, Woodlands issued an Official Statement titled The Woodlands Township Sales Tax and Hotel Occupancy Tax Refunding Bonds Series 2010.

31.     Pursuant to the 2010 Bond Order, on March 1, 2011, Woodlands refunded the 2001 Bonds and issued $44,000,000 in new bonds known as The Woodlands Township Sales Tax and Hotel Occupancy Tax Refunding Bonds, Series 2010 (the "2010 Bonds").   In other words, after March 1, 2011, the 2001 Bonds ceased to exist.

32.     In direct contravention of Woodlands' contractual obligations, Woodlands did not notify UniCredit, orally or in writing, that Woodlands had issued the 2010 Bond Order; that

Woodlands was redeeming the 2001 Bonds; or that Woodlands had issued the 2010 Bonds (together, the "2010 Refunding"). Woodlands failed to notify UniCredit despite the fact that Woodlands was in regular contact with UniCredit concerning the Transaction about numerous ministerial issues related to the 2001 Bonds, including, for example, advising UniCredit that Woodlands had changed its name from the Town Center Improvement District to The Woodlands Township.

33. Woodlands failed to notify UniCredit about the 2010 Refunding because Woodlands knew and understood that the 2010 Refunding required termination of the Transaction pursuant to the Contract.

34. UniCredit was not aware of the 2010 Refunding until November 2011, when UniCredit discovered the actions that Woodlands had taken during a routine review of the UniCredit portfolio.

35. On Friday, November 18, 2011, UniCredit called Woodlands Finance Director Monique Sharp and explained that the 2010 Refunding required termination of the Transaction pursuant to the Contract, and that UniCredit would agree to terminate the Contract, without penalty to Woodlands, if Woodlands provided a termination letter immediately. Ms. Sharp agreed to provide a termination letter the following week.

36. UniCredit received no termination letter from Woodlands. UniCredit attempted to contact Ms. Sharp on several occasions after November 18, 2011 to advise Woodlands that it was in violation of the Contract. UniCredit received no response from Woodlands to its numerous inquiries.

37. On January 18, 2012, UniCredit was contacted by Woodlands' financial advisor, First Southwest, which advised UniCredit that Woodlands would not agree to terminate the

Contract – as Ms. Sharp had represented – because, in Woodlands' view, the 2010 Refunding did not require termination of the Contract.

38. For the next several weeks, UniCredit and Woodlands engaged in negotiations in an attempt to resolve their dispute. In the course of negotiating with Woodlands (and its financial advisors and counsel), UniCredit extended the deadline by which Woodlands could terminate the Contract without penalty several times, including on January 26, 2012, when UniCredit provided Woodlands an extension until February 3, 2012.

39. On February 3, 2012, Woodlands informed UniCredit that it had filed a declaratory judgment action in Texas on January 30, 2012.

## CAUSE OF ACTION

### Count I -- Material Partial Breach of Contract

40. UniCredit hereby repeats and realleges the allegations of paragraphs 1-39 as if set forth fully herein.

41. UniCredit and Woodlands entered into a valid and enforceable Contract on or about July 26, 2001.

42. UniCredit fully performed, and continues to perform, all of its obligations under the terms of the Contract.

43. Woodlands committed a series of material breaches of the Contract beginning August 31, 2010 in connection with the 2010 Refunding.

44. Woodlands further breached the Contract on March 26, 2012 when, in connection with this action, it filed a demand for a trial by jury (Dkt. # 1) despite the provision in the Contract providing that, "Neither [Woodlands] nor [UniCredit Bank] shall seek a jury trial in any action based upon or arising out of [the Contract] or any related certificate, document or

agreement. [Woodlands] and [UniCredit] further agree not to seek to consolidate any such action with any other action in which trial by jury has not been waived."

45.   As a result of Woodlands' material breaches, UniCredit has been damaged in an amount at least equal to the interest that UniCredit has paid to Woodlands since August 31, 2010, to which Woodlands is not entitled.

## PRAYER FOR RELIEF

WHEREFORE, UniCredit prays for relief as follows:

46.   Woodlands takes nothing as a result of its complaint.

47.   A declaration from the Court that: (i) the Contract is currently terminable by UniCredit; (ii) Woodlands' conduct has triggered UniCredit's right to terminate the Contract; (iii) the Contract is no longer valid; (iv) UniCredit is no longer obligated to make interest payments under the Contract; and (v) Woodlands has been unjustly enriched by interest payments made by UniCredit since August 31, 2010.

48.   Judgment be entered in favor of UniCredit and against Woodlands and award UniCredit:

    a.   compensatory damages to be proven at trial;

    b.   attorneys' fees and costs;

    c.   other relief the Court deems appropriate.

Respectfully submitted,

s/ Mark P. Ressler
Mark P. Ressler (admitted *pro hac vice*)
Michael A. Hanin (admitted *pro hac vice*)
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
Fax: (212) 506-1800

ATTORNEY-IN-CHARGE FOR
DEFENDANT UNICREDIT BANK AG

OF COUNSEL:
Jerry L. Mitchell
Southern District I.D. No. 12653
State Bar No. 14214650
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, Texas  77002
(713) 220-8800
Fax: (713) 222-0843

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure, on this the 2nd day of April, 2012.

s/ Jerry L. Mitchell
Jerry L. Mitchell