UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WOODLANDS TOWNSHIP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-745 |
| | § | |
| UNICREDIT BANK AG, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff/Counter Defendant The Woodlands Township's, f/k/a Town Improvement District, ("The Woodlands") motion to dismiss the counterclaim of Defendant/Counter Plaintiff UniCredit Bank AG, f/k/a Bayerische Hypo-Und Vereinsbank AG, ("UniCredit"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Pl's. Mot. to Dismiss, Doc. 30. Also before the Court is UniCredit's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Def's. Mot. for J. on the Pleadings, Doc. 35. After reviewing the pleadings, the motions and responses, and the applicable law, the Court finds The Woodlands's motion to dismiss should be granted and UniCredit's motion for judgment on the pleadings should be denied.

**I.      Background**

This is a breach of contract suit between The Woodlands, a Texas governmental organization with its principal place of business in The Woodlands, Texas, and UniCredit, a German bank with a New York branch office that does business in Texas. Def's. Notice of Removal ¶¶ 3–4, Doc. 1. On June 14, 2001, The Woodlands passed a bond resolution (the "Resolution") (Doc. 30-1) authorizing the issuance and sale of sales tax and hotel occupancy tax bonds ("the 2001 Bonds"). Def.'s Am. Answer and Countercl., Doc. 29 ¶ 35; Doc. 30 at 3. The

Resolution authorized The Woodlands to raise $51,250,000 for the cost of an improvement project to promote and develop economic activity and commerce in The Woodlands. Doc. 30 at 3. The Woodlands placed the money raised by the bond sale into several project funds established by the Resolution. *Id.* One such fund was the Debt Service Reserve Fund, which was intended to be a backup fund to protect bondholders. Doc. 29 ¶ 36; Doc. 30 at 4. The Resolution allowed The Woodlands to invest some or all of the money in the funds and on July 26, 2001, The Woodlands invested the $1,877,187.50 Debt Service Reserve Fund with UniCredit under a PSA Master Repurchase Agreement & Annex I (the "Repurchase Agreement," Doc. 1-5). Doc. 29 ¶ 37; Doc. 30 at 3–4.

Under the Repurchase Agreement, The Woodlands agreed to transfer its investment to UniCredit in exchange for UniCredit transferring securities to The Woodlands. Doc. 29 ¶ 37; Doc. 30 at 3. Additionally, UniCredit agreed to pay a 5.9 percent fixed-rate of interest to The Woodlands twice per year through March 1, 2027, and to repurchase the securities and return The Woodlands's original investment at the end of that term. Doc. 29 ¶ 37; Doc. 30 at 3–4. The Bank of New York ("BONY") acted as the custodian of both the funds invested by The Woodlands and the securities transferred by UniCredit. Doc. 29 ¶ 39. From July 2001 until March 2013, UniCredit made its required interest payments to The Woodlands. Pl's. Supplemental Compl. at 2, Doc. 27.

On August 31, 2010, The Woodlands issued a bond order authorizing the advance refunding and redemption of the 2001 Bonds, and on March 1, 2011, The Woodlands refunded the 2001 Bonds. Def's. Answer and Countercl., Doc. 12 ¶¶ 29, 31. The Woodlands did not notify UniCredit that it refunded the 2001 Bonds and UniCredit did not learn that the Bonds had been refunded until November 2011. *Id.* ¶ 34. On November 18, 2011, a UniCredit agent called

2 / 16

The Woodlands's Finance Director and insisted that the refunding of the 2001 Bonds triggered UniCredit's right to terminate the Repurchase Agreement and demanded that The Woodlands's immediately provide UniCredit with a termination letter. Doc. 29 ¶ 35; Doc. 30 at 5. The Woodlands disagreed and, on January 30, 2012, filed a petition in the 284th Judicial District Court of Montgomery County, Texas, seeking a declaratory judgment that the redemption of the 2001 Bonds did not trigger UniCredit's right to terminate the Repurchase Agreement. Pl.'s Original Pet., Doc. 1-2 ¶ 11. UniCredit subsequently removed the case to this Court and filed its own counterclaim seeking a declaratory judgment that the 2001 contract was terminable by UniCredit. Doc. 12 ¶ 47.

On March 11, 2013, and before the Court ruled on the parties' declaratory judgment claims, UniCredit declared an event of default and terminated the Repurchase Agreement by sending notice to BONY and requesting an immediate liquidation of The Woodlands's investment. Doc. 27 ¶ 8–9; Doc. 29 ¶¶ 46–49. Twenty-eight interest payments totaling approximately $1.5 million remained outstanding when UniCredit terminated the Agreement. Doc. 27 ¶¶ 12–13. No longer pointing to the refund of the 2001 Bonds as its basis for the termination, UniCredit now claims that it was entitled to terminate the Agreement because "certain contractual representations made by [The Woodlands] were allegedly 'incorrect or untrue' in a 'material respect' at the time they were made." Doc. 27 ¶ 9; Doc. 29 ¶ 40–45. Specifically, UniCredit points to Section 10(v) of the Repurchase Agreement wherein the parties represented that, "[T]he execution, delivery and performance of this agreement and the transactions hereunder will not violate any law, ordinance, charter, by-law or rule applicable to it or any agreement by which it is bound or by which any of its assets are affected." Doc. 29 ¶ 40. UniCredit claims that by making this representation, The Woodlands materially misrepresented

that the Repurchase Agreement did not violate the 2001 Resolution. *Id.* ¶¶ 40–45. According to UniCredit, the 2001 Resolution permitted The Woodlands to invest only in repurchase agreements that provided for mandatory termination upon a ratings downgrade below certain levels and only with a registered broker-dealer subject to Securities Investors Protection Corporation jurisdiction or a federally-insured commercial bank. *Id.* UniCredit claims that because the Repurchase Agreement did not include such a mandatory termination provision and because UniCredit is not a registered broker-dealer or a federally-insured commercial bank, the Repurchase Agreement violated the 2001 Resolution by which The Woodlands was bound and The Woodlands materially misrepresented that fact when it entered the Repurchase Agreement. *Id.* ¶¶ 43–44. As a result of The Woodlands's alleged misrepresentation, UniCredit claims it was within its contractual right to terminate the agreement under Section 11(vi) of the Repurchase Agreement, which allows a party to declare an event of default if "any representation made by Seller or Buyer shall have been incorrect or untrue in any material respect when made or repeated or deemed to have been made or repeated." *Id.* ¶ 41.

After receiving UniCredit's notice of default, The Woodlands filed a supplemental complaint against UniCredit on March 20, 2013 alleging that UniCredit breached the Repurchase Agreement. Doc. 27 ¶ 21. On April 15, 2013, UniCredit filed an amended answer and asserted counterclaims against The Woodlands for breach of contract and unjust enrichment. Doc. 29 ¶¶ 63–72. UniCredit continues to argue that The Woodlands made material misrepresentations upon entering into the Repurchase Agreement which constituted a material breach and gave rise to an event of default enabling UniCredit to terminate the agreement. Doc. 29 ¶¶ 63–72. The Woodlands contends that UniCredit is simply trying to avoid its payment obligations under what

has become a very unprofitable agreement for UniCredit since interest rates have dropped significantly since the Agreement was signed. Doc. 30 at 1.

On May 6, 2013, The Woodlands moved to dismiss UniCredit's counterclaims for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). Doc. 30. On June 11, 2013, UniCredit filed a motion for judgment on the pleadings pursuant to Rule 12(c), repeating the arguments made in its counterclaim and asking the Court to dismiss The Woodlands's supplemental complaint. Doc. 35. The Court proceeds to consider each motion in turn.

## II.     The Woodlands's Rule 12(b)(6) Motion to Dismiss

In its motion to dismiss, The Woodlands argues that UniCredit's breach of contract counterclaim is barred by the statute of limitations.[1] Doc. 30 at 8–10. The Woodlands states that the Repurchase Agreement is governed by Texas law, which has a four-year statute of limitations for contract actions and a three-year statute of limitations for challenging governmental actions. *Id.* The Woodlands argues that if it actually breached the contract at its inception, as UniCredit alleges, the statute of limitations expired in 2005, at the latest, and UniCredit's claim is barred. *Id.* In addition, the Woodlands argues, UniCredit cannot claim that the discovery rule should apply to toll the statue because UniCredit had a copy of the Resolution when the parties signed the Repurchase Agreement in 2001. *Id.* at 9. As such, UniCredit had constructive notice of the Resolution and its terms and provisions at that time and its breach of contract claim should be dismissed. *Id.* The Woodlands contends that UniCredit's claim for unjust enrichment is likewise

---

[1] The Woodlands argues in the alternative that it did not misrepresent its authority to enter the Repurchase Agreement and that UniCredit does not have standing to claim a breach in connection with the Resolution, as it was not a party thereto. Doc. 30 at 10–12. The Court need not reach these additional arguments as it concludes that UniCredit's claims are barred by the statute of limitations.

barred by the statute of limitations, and also barred by the existence of an express contract. *Id.* at 13–14.

UniCredit responded to The Woodlands's motion by filing a Rule 12(c) motion for judgment on the pleadings. Doc. 34. In its motion/response, UniCredit raises two arguments to avoid the statute of limitations. First, UniCredit argues for the first time that its breach of contract claim is not time barred because Section 11 of the Repurchase Agreement provided that "[o]n the Purchase Date for any Transaction [The Woodlands] and [Unicredit] shall each be deemed to repeat [the representations made in Section 10]." *Id.* at 2. Based on this provision, UniCredit claims, The Woodlands's misrepresentation as to its authority to enter the Repurchase Agreement constituted an "event of default," and, therefore, a breach, at the time the parties entered the Agreement in 2001 and on each "Purchase Date for any Transaction" thereafter, when that alleged misrepresentations were "deemed to be repeated." *Id.* at 2–3. UniCredit explains its interpretation of the phrase "Purchase Date for Any Transaction" in the Agreement as follows:

> As defined in the Contract, "Purchased Securities" includes securities substituted by UniCredit (Section 9)[2], as well as securities used by UniCredit to perform margin maintenance (Section 4(a))[3]....UniCredit made such substitutions and

---

[2] Section 9 states:

> Substitution. (a) Seller may, subject to agreement with and acceptance by Buyer, substitute other Securities for any Purchased Securities. Such substitution shall be made by transfer to Buyer of such other Securities and transfer to Seller of such Purchased Securities. After substitution, the substituted Securities shall be deemed to be Purchased Securities.

[3] Section 4(a) states:

> Margin Maintenance. (a) If at any time the aggregate Market Value of all Purchased Securities subject to all Transactions in which a particular party hereto is acting as Buyer is less than the aggregate Buyer's Margin Amount for all such Transactions (a "*Margin Deficit*"), the Buyer may by notice to Seller require Seller in such Transactions, at Seller's option, to transfer to Buyer cash or additional Securities reasonably acceptable to Buyer ("Additional Purchased Securities"), so that the cash and aggregate Market Value of the Purchased Securities, including any such Additional Purchased Securities, will thereupon equal or exceed such aggregate Buyer's Margin Amount (decreased by the amount of any Margin Deficit as of such date arising from any

> deliveries of "Purchased Securities" on a *nearly daily basis* from July 26, 2011 to March 11, 2013.

Doc. 34 at 13 (citing Doc. 1-5 at 2, 4, 6) (emphasis in original). According to UniCredit, there were "literally hundreds of Purchase Dates" over the life of the Agreement, and many within the limitations period. *Id.* at 3, 10. Second, UniCredit argues, also for the first time, that New York law, not Texas law, governs the contract and should apply to its breach of contract claim, thereby extending the statute of limitations to six years. *Id.* at 9. Third, UniCredit preemptively argues that its continued performance under the contract does not constitute a waiver of its right to bring suit because 1) UniCredit was unaware of the alleged breach until 2012, and actual knowledge of the breach is required before a clear intent to "relinquish its contractual right can manifest," and 2) the Repurchase Agreement contains a "no waiver" clause. *Id.* at 17 n.12.[4] UniCredit also contends that its unjust enrichment claim is timely under the two-year statute of limitations applicable to that claim because The Woodlands has improperly received benefits from UniCredit within the last two years. *Id.* at 7.

### A. *Choice of Law*

As an initial matter, the Court must determine which state's laws govern the contract in this case. UniCredit points to Section 16 of the Repurchase Agreement, which states the agreement "shall be governed by the laws of the State of New York…" Doc. 1-5 at 13. Annex I to the Repurchase Agreement, however, clearly states that Section 16 is deleted and restated as follows: "[t]his Agreement shall be governed by the laws of the State of Texas without giving full effect to the conflict of law principles thereof." *Id.* at 26. Further, Annex I states, "[t]o the

---

> Transactions in which such Buyer is acting as Seller).

[4] The "No Waivers, Etc." in the Repurchase Agreement states:

> "No express or implied waiver of any Event of Default by either party shall constitute a waiver of any other Event of Default and no exercise of any remedy hereunder by any party shall constitute a waiver of its right to exercise any other remedy hereunder…"

extent that the terms and conditions of this Annex I conflict with the terms and conditions of the Master Repurchase Agreement, the terms and conditions of this Annex I shall prevail." *Id.* at 24. Because the parties clearly and unambiguously chose to have the Agreement construed in accordance with Texas law, the Court must give effect to that choice. *See Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 825 (S.D. Tex. 2010) (holding that a claim for breach of contract should be governed by the law specified in the choice of law clause). Therefore, Texas's four-year statute of limitations for breach of contract applies to UniCredit's claim. *See* TEX. CIV. PRAC. & REM. CODE § 16.051; *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

### B. Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). In determining plausibility, courts should first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 662. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b)(6). *Id.* at 678. Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. The court makes its determination based on the "contents of the pleadings, including any attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Failure to file an action within the statute of limitations is an affirmative defense that may be properly raised in a Rule 12(b)(6) motion. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### C. Discussion

#### 1. Breach of Contract

UniCredit's argument that it may be able to avoid the statute of limitations in part by invoking some variation of the "continuing violation" doctrine turns on the meaning of the phrase "Purchase Date for any Transaction," and, more specifically, the term "Transaction" in the Repurchase Agreement. When construing a contract, the primary concern of the court is to determine the true intent of the parties as expressed in the agreement. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To ascertain the intent of the parties, a court will consider the "*entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* at 393 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, (1951) (emphasis in original). "If the written instrument is so worded that

it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id*. "A contract, however, is ambiguous when its meaning is uncertain…or it is reasonably susceptible to more than one meaning." *Id.* (citing *Skelly Oil Co. v. Archer*, 163 Tex. 336 (1962). If a contract is determined to be ambiguous, then the interpretation becomes a fact issue. *Id.* Mere disagreement, however, over the interpretation by the parties does not render the contract ambiguous, as the court must determine the parties' intent from the contract itself, not from the parties' interpretation. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 759 (Tex. App.—El Paso 2000, no pet.).

Here, the term "transaction" is used throughout the Repurchase Agreement and Annex I. The most pertinent and illustrative uses are in the following two sections:

Section 1 (Applicability) of the Repurchase Agreement states,

"From time to time the parties hereto may enter into transactions in which [UniCredit] agrees to transfer to [The Woodlands] securities or other assets against the transfer of funds by [The Woodlands], with a simultaneous agreement by [The Woodlands] to transfer to [UniCredit] such securities…against the transfer of funds by [UniCredit]. Each such transaction shall be referred to herein as a 'Transaction' and, unless otherwise agreed in writing, shall be governed by this Agreement…"

Doc. 29-2 at 4.

Section 19(a) (Intent), states, "the parties recognize that each Transaction is a 'repurchase agreement' as that term is defined in Section 101 of Title 11 of the United States Code…" (Doc. 29-2 p. 13). In relevant part, "repurchase agreement" is defined in Section 101 as:

(i) an agreement…which provides for the transfer of one or more…securities…against the transfer of funds by the transferee…with a simultaneous agreement by such transferee to transfer to the transferor thereof…securities…against the transfer of funds;

(ii) any combination of agreements or transactions referred to in…(i) and (iii);

  (iii)  an option to enter…an agreement or transaction referred to in clause (i) or (ii);

  (iv)  a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), or (iii)…

11 U.S.C. § 101 (2012).

  In light of these uses and definitions, the Court concludes that the term "transaction" and the phrase "Purchase Date for any Transaction" in the Repurchase Agreement and Annex I are unambiguous. A "transaction," as contemplated under this agreement, is an exchange of securities for funds between The Woodlands and UniCredit. This definition is consistent with all uses of the term throughout the Agreement and the Annex, and gives effect to all provisions thereof so that none are rendered meaningless.

  UniCredit does not contest that only one Transaction occurred. Instead, UniCredit supports its theory by focusing on the term "Purchase Date" in Section 10(v) and ignoring the term "Transaction." Using this interpretation, UniCredit claims The Woodlands's representations were "repeated" on each "Purchase Date," which encompasses the "daily" transfers of securities pursuant to Section 4(a) (Margin Maintenance) and Section 9 (Substitutions). The rules of contract interpretation prevent such a reading. The Court must consider the *entire* writing when ascertaining the true intent of the parties. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W. 2d at 393 (citing *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962); *Citizens Nat'l Bank in Abilene v. Tex. & P. Ry. Co.*, 136 Tex. 222 (1941)). Section 10(v) states that representations are deemed repeated "[o]n the Purchase Date for any *Transaction*" (emphasis added), not "on the date that Purchased Securities are delivered pursuant to paragraphs 4 or 9." UniCredit's reading of

Section 10(v) is contrary to the rules of contract interpretation and its attempt to extend the statute under a continuing violation theory fails.

Finally, UniCredit's argument that it has not waived its right to sue The Woodlands for breach of contract, or that the Repurchase Agreement's "no waiver" clause preserved its right to sue, is without merit. Neither by its express terms nor its implications does the no waiver clause extend the statute of limitations for UniCredit's claim for breach of contract. UniCredit had constructive notice of all the facts giving rise to its claim when the Repurchase Agreement was signed and it received a copy of the 2001 Bond Resolution.

A party asserting a breach of contract claim must bring it no later than four years after the day the claim accrues. TEX. CIV. PRAC. & REM. CODE § 16.051. "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592. Under an unambiguous reading of the Repurchase Agreement, the alleged misrepresentations were made once, if ever, at the time the parties entered the Repurchase Agreement on July 26, 2001. Therefore, the claim accrued on July 26, 2001, the statute of limitations expired on July 26, 2005, and UniCredit's claim, filed on April 15, 2013, is barred.

2. *Unjust Enrichment*

A party may recover under an unjust enrichment theory when one party has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). When a valid, express contract covers the subject matter of the parties' dispute, however, there can be no recovery under unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *TransAm. Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied)). Parties should be bound by their express agreements, and when a valid

agreement already addresses the matter, recovery under an equitable theory is inconsistent with the express agreement. *Id.* (citing *TransAm.*, 933 S.W.2d at 600).

UniCredit argues that it can maintain its alternative claim for unjust enrichment despite the existence of an express agreement because The Woodlands lacked authority to execute the Repurchase Agreement, thereby rendering it invalid. Doc. 34 at 15. According to UniCredit, whether an unauthorized contract is void or voidable is an open question under Texas law. *Id.* n. 15. UniCredit again attempts to avoid the statute of limitations on its unjust enrichment claim by arguing that The Woodlands was unjustly enriched "each time" it received a bi-annual interest payment.

The Court need not reach the issue of whether or not the Repurchase Agreement was void or voidable, as the statute of limitations on UniCredit's unjust enrichment claim is two years, and, therefore, expired even before the statute of limitations on its breach of contract claim expired. TEX. CIV. PRAC. & REM. CODE § 16.003; *see also Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007). Both claims are based on the same alleged facts; thus, they accrued at the same time. As discussed above, the Court rejects UniCredit's continuing violation theory.

In sum, UniCredit's breach of contract and unjust enrichment claims are barred by the statute of limitations, and they are dismissed.

### III. UniCredit's Rule 12(c) Motion for Judgment on the Pleadings

UniCredit moves for judgment on the pleadings on The Woodlands's supplemental claim for breach of contract. Doc. 34. UniCredit argues that it had an "unambiguous contractual right…to declare an Event of Default and terminate the contract" under Section 11(vi) because The Woodland's breached the contract by misrepresenting its authority under Section 10. *Id.* at

9–10.  Section 11(vi) provides that an event of default may be declared in the event that "any representation made by Seller or Buyer shall have been incorrect or untrue in any material respect when made or repeated or deemed to have been made or repeated."  Doc. 29-2 at 9.  UniCredit argues the alleged misrepresentations made by The Woodlands are material, and therefore provide UniCredit a contractual right to terminate the agreement.  Doc. 34 at 9–10.

The Woodlands filed a response to UniCredit's motion in which it asserts that it did not "make any representations in the Contract that were 'incorrect or untrue in any material respect,'" and contends that the Court is required to take its assertion as true at the pleading stage.  Doc. 38 at 8 (citing Doc. 27 ¶ 17).  In addition, The Woodlands contends that even if it did make the allegedly material misrepresentations that UniCredit claims, The Woodlands may still maintain a claim for breach of contract against UniCredit because UniCredit did not provide notice of default "as promptly as practicable," as required by the Agreement, but instead waited twelve years.  *Id.*

### A.     Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  A motion brought pursuant to Rule 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  "A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)."  *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 209-10 (5th Cir. 2010).

"The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief…there are no disputed issues of fact, and only questions of law remain." *Id.* at 312 (quoting *Hughes v. Tobacco, Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. [T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove..." *Id.* at 313 (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

### B.  Discussion

In Texas, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAm., Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Here, The Woodlands has alleged the existence of a valid contract, performance, breach and damages. At this stage, the Court is bound to accept these allegations as true and view them in a light most favorable to The Woodlands. UniCredit's allegation that it was entitled to terminate the agreement because The Woodlands breached the agreement first by making material misrepresentation turns on an issue of fact. *See Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *9 (N.D. Tex. Aug. 20, 2012) (citing *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 394 (Tex. App.—Texarkana 2003, pet. denied) (Whether a party's breach of contract is so material as to render the contract unenforceable is typically a question of fact to be determined by the trier of fact."); *see also Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 & n.2 (Tex. 1994). UniCredit's motion requires the Court to determine the materiality of the alleged breach.

Therefore, material facts remain in dispute and UniCredit's motion for judgment on the pleadings fails.

**IV.     Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that The Woodlands's motion to dismiss (Doc. 30) is **GRANTED**. It is further

**ORDERED** that UniCredit's motion for judgment on the pleadings (Doc. 35) is **DENIED**.

SIGNED at Houston, Texas, this 6th day of August, 2014.

                                                                          _____
                                                                                     MELINDA HARMON
                                                                          UNITED STATES DISTRICT JUDGE